UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RICHARD MARTINEZ, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>NEDRA CHANDLER, Warden,[1] )<br>)<br>Respondent. ) | Case No. 11-2277 |

## OPINION

On November 10, 2011, petitioner, Richard Martinez, filed a pro se Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody (#1). On February 17, 2012, Respondent filed an Answer to the Petition (#13) and attached exhibits, including portions of the state court record. Petitioner has not filed a Reply.

This court has thoroughly reviewed the arguments of the parties and the lengthy exhibits filed in this case. Following this careful review, petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

## FACTS[2]

On the night of June 20, 2003, Champaign County Deputy Sheriff John Reifsteck received a call regarding a man sleeping in a utility truck. When Reifsteck went to the truck and attempted to talk to petitioner, petitioner proceeded to exit the truck and run. Deputy Reifsteck pursued and caught petitioner. A struggle ensued in which petitioner ultimately obtained Reifsteck's firearm. Petitioner pointed the gun at Reifsteck, told him

---

[1] Petitioner has been transferred to Dixon Correctional Center. Therefore, the clerk will be directed to substitute Nedra Chandler, Warden of Dixon Correctional Center, as Respondent in this case. The clerk will also be directed to terminate Lisa Madigan as a Respondent.

[2] This court has summarized the facts recited in the decision of the Appellate Court, Fourth District, in People v. Martinez, Case 4-10-0722 (unpublished order filed March, 16, 2011). This court has also included additional facts contained in the exhibits provided by Respondent.

to backup, and proceeded to flee on foot. Shortly thereafter, petitioner broke into the home of Brad Houchens, took what appeared to be a set of car keys, and proceeded to approach the driver's side door of Houchens's truck and fumble with the lock mechanism. Petitioner then left the Houchens property and returned to the mobile home where he had been staying with a coworker named Daniel O'Connor. Petitioner told O'Connor that petitioner "needed to get out of there right away." O'Connor believed that petitioner was intoxicated. O'Connor no longer wanted petitioner in the mobile home, so he agreed to drive petitioner away.

By this time, a number of police officers from Champaign and the surrounding area had become involved in the search for petitioner. As O'Connor drove his truck, with petitioner in the passenger seat, out of the trailer park, he came upon several police officers. O'Connor attempted to follow police orders by putting the truck in park and putting his hands outside the truck window. Petitioner did not comply and attempted to shift the truck back into drive. O'Connor believed that petitioner was also attempting to press the truck's gas pedal with his hand. Believing that they were in danger, two officers fired shots at petitioner. Petitioner was shot once in the face and apprehended. Petitioner claims that, due to his level of intoxication or the injuries he sustained, he recalls only sporadic pieces of the events that took place that night.

Petitioner was indicted on five counts: (1) burglary, with respect to the utility truck; (2) aggravated battery, committed upon Officer John Reifsteck; (3) possession of a stolen firearm, with respect to petitioner's possession of Reifsteck's firearm; (4)

disarming a peace officer, with respect to petitioner's removal of Reifsteck's firearm; and (5) residential burglary, with respect to petitioner's entry into Brad Houchens's home with the intent to commit theft.

On October 6, 2003, in the Circuit Court of Champaign County, Illinois, petitioner entered into an open plea of guilty to one count of disarming a peace officer and one count of residential burglary. Petitioner was admonished by the court to "not offer to plead guilty here today if there is anything you do not understand." After receiving specific instructions from the court regarding his plea options and the consequences of those options, petitioner went through with his guilty plea. Petitioner confirmed that the only agreement with respect to his guilty plea was that Counts I through III would be dropped, leaving the residential burglary charge and disarming a peace officer charge. On January 23, 2004, the trial court sentenced petitioner to consecutive terms of seven years for disarming a peace officer and fifteen years for residential burglary. Petitioner filed a motion to reconsider sentence, or, in the alternative, for a new sentence hearing; the court denied the motion on March 19, 2004.

Petitioner appealed his sentence to the Illinois Appellate Court, Fourth District, arguing that the trial court erred in: (1) imposing the maximum sentences on each count; and (2) ordering consecutive sentences. On July 12, 2005, the appellate court affirmed the trial court's judgment, holding that the trial court did not abuse its discretion. Petitioner did not file a petition for leave to appeal with the Illinois Supreme Court.

On January 13, 2006, petitioner filed a pro se petition for post-conviction relief in

the Circuit Court of Champaign County, alleging that plea counsel Walter Ding was ineffective in that he: (1) failed to have meaningful conversations with petitioner about the case; (2) did not ask for, and did not listen to, information from petitioner about the incident in question; (3) misrepresented the State's plea offer; and (4) failed to file a motion to withdraw the guilty plea. Petitioner also alleged that sentencing counsel Kevin Nolan was ineffective for failing to file a motion to withdraw his guilty plea.

On February 15, 2007, the trial court held a hearing on petitioner's post-conviction petition. Petitioner and Ding testified at the hearing. On April 28, 2008, the trial court issued an opinion. Using the two prong test of Strickland v. Washington, the court rejected each of petitioner's ineffective assistance allegations against Ding, but held that petitioner established deficient performance by Nolan. See Strickland v. Washington, 466 U.S 668 (1984). The court held that the appropriate remedy was to grant petitioner leave of court to file a motion to withdraw his guilty plea.

On May 27, 2008, petitioner filed a motion to withdraw guilty plea or, in the alternative, a motion to reconsider sentence. In the motion, petitioner alleged that his plea of guilty for both charges was involuntary, unknowing and unintelligently given for the following reasons: (1) petitioner was unable to recall much of the incident in question due to the injuries he sustained; (2) petitioner was in serious pain and did not have the physical or emotional stamina needed to process information presented to him during the plea and sentencing proceedings; (3) Ding denied petitioner's request to view the discovery materials; (4) Ding was ineffective when he failed to consider the impact of

4

petitioner's condition, including his memory loss, on his ability to make an informed decision between going to trial and pleading guilty; (5) at the time of his plea, petitioner did not understand that the fingerprint analysis was inconclusive, that the blood was never tested, and that the eye witness description did not match his height, weight or complexion. A hearing was held on August 26, 2008, and petitioner testified.

In a written order dated May 30, 2010, the court denied petitioner's motion to withdraw his guilty plea or to reconsider his sentences. In reaching this conclusion, the court identified the standard in Hill v. Lockhart, 474 U.S. 52 (1985), and determined that because of the strong eyewitness testimony against petitioner on the residential burglary charge, the existence of inconclusive fingerprint and blood evidence did not create a likelihood that petitioner would have been acquitted at trial; therefore, petitioner had not shown that, had he known of the blood and fingerprint results, he would not have pleaded guilty.

Petitioner subsequently appealed to the Illinois Appellate Court, arguing that the trial court incorrectly determined that he was afforded effective assistance of counsel and that his guilty plea was knowingly made. The court affirmed the trial court's decision. People v. Martinez, Case No. 4-10-0722 (unpublished order). The court rejected petitioner's claims that Ding's performance was deficient and also stated that "[e]ven assuming Ding's performance as defendant's counsel was deficient, defendant failed to show the outcome of his case would have likely been different had he proceeded to trial" because the evidence related to the residential burglary charge was compelling. Martinez,

Case No. 4-10-0722, at p. 12. The court stated:

> In its factual basis the State alleged an eye witness identified defendant as the perpetrator of the offense. That eye witness made an in-court identification of defendant as the perpetrator at sentencing. Also, the residential burglary can be linked closely in time and in proximity to the events over which defendant does not dispute involvement, the disarming of a peace officer and flight from police. Neither minor discrepancies in the initial general description provided by the eye witness nor the lack of blood or fingerprint evidence linking defendant to the crime is sufficient to show that defendant would likely have prevailed had his case gone to trial.

Martinez, Case No. 4-10-0722, at pp. 12-13.

On June 20, 2011, petitioner filed a petition for leave to appeal (PLA) his ineffective assistance of counsel claim to the Illinois Supreme Court. The court denied the PLA on September 28, 2011.

## ANALYSIS

### I. ISSUES RAISED

Petitioner's Petition (#1) was filed in this court on November 10, 2011.[3] In his petition, petitioner listed three claims: (1) petitioner's right to effective assistance of

---
[3] Respondent has not argued that the Petition was untimely.

counsel was violated and said violations led to petitioner's ill-advised decision to plead guilty to the residential burglary charge; (2) the trial court rendered a post-conviction decision that remains contrary to the facts of this case, and an unreasonable application of the law regarding petitioner's claim of ineffective assistance of counsel; (3) the trial court's denial of petitioner's motion to withdraw guilty plea, and the appellate court decision affirming that decision, are unreasonable. Petitioner's claims relate solely to his guilty plea to residential burglary. All three of his claims are dependent on his assertion that Ding provided ineffective assistance of counsel prior to petitioner's plea.

On February 17, 2012 respondent filed an answer to the petition with attached exhibits. Respondent argued that this court should deny the petition because the state court's determination that plea counsel was effective was reasonable and supported by the testimony of both plea counsel Ding and petitioner.

## II. STANDARD

### A. REVIEW OF MERITS UNDER AEDPA

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), an application for a writ of habeas corpus on behalf of a person in custody shall not be granted unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). This "highly deferential standard for

7

evaluating state-court rulings" imposed by the AEDPA "demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Further, "[t]he state court decision is reasonable if it is 'minimally consistent with the facts and circumstances of the case.'" Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002), quoting Schaff v. Snyder, 190 F.3d 513, 522 (7th Cir. 1999).

### III. PETITIONER'S CLAIMS

To establish ineffective assistance of counsel a defendant must show that his counsel's performance was deficient and that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S at 687.

### A. DEFICIENT PERFORMANCE

Under Strickland, the "proper standard for attorney performance is that of reasonably effective assistance." Id. "[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not a reasonably competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." Id. (internal citations and quotations omitted).

Petitioner complains Ding was ineffective in that petitioner was not permitted to obtain a copy of discovery materials, and accordingly, was misinformed by Ding with respect to the State's evidence against him. He claims that had he known the true nature of the evidence, he would have insisted on going to trial. After careful review, the court rejects these arguments. In People v. Davison, the court held that "counsel's decision whether to provide his client with discovery materials constitutes a matter of trial strategy

8

and judgment that ultimately lies within counsel's discretion." People v. Davison, 686 N.E.2d 1231, 1236 (Ill. App. Ct. 1997). Petitioner cites no United States Supreme Court case in support of his view that he has a constitutional right to view discovery materials. This court is unaware of any Supreme Court decision stating that defense counsel is obligated to share discovery materials with the defendant.[4]

Petitioner also complains that Ding was ineffective in that he advised petitioner to plead guilty despite the fact that the blood evidence was never tested and the fingerprint analysis was inconclusive. Ding testified that even in the absence of conclusive test results identifying petitioner, he felt that the State still had a strong case against petitioner given the circumstances. Accordingly, he advised petitioner to plead guilty. In light of eyewitness testimony and petitioner's lack of memory of the events in question, Ding's counsel to plead guilty meets the reasonableness standard set forth in Strickland.

Accordingly, this court finds that the Illinois Appellate Court was reasonable in finding that petitioner's plea counsel was effective.

## B. PREJUDICE

Even assuming that Ding's plea counsel was deficient, petitioner's unsupported contention that he would have opted to go to trial had he been effectively counseled by his lawyer is insufficient. See Morales v. Boatwright, 580 F.3d 653, 663 (7th Cir. 2005). Petitioner must go further and must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

---

[4] This court notes that other courts have concurred with the holding in Davison, using similar logic as their justification. See People v. Krueger, ___ P.3d ___, 2012 WL 1638676, at *3-4 (Colo. Ct. App. May 10, 2012) (and cases cited therein).

to trial." Hill, 474 U.S. at 59. This assessment will depend largely on a prediction whether the evidence likely would have changed the outcome of the trial. Id.

This court agrees with respondent that petitioner has failed to show that he would not have pleaded guilty had Ding been more effective. Petitioner asserts that had he known the true nature of the fingerprint and blood evidence, in addition to the eyewitness account, he would not have pleaded guilty. While this evidence may have been somewhat helpful to petitioner, the Illinois Appellate Court noted that the evidence related to the residential burglary charge was still compelling. This court agrees. The State's offer of proof included an eyewitness who identified petitioner as the person who was seen entering a residence without permission, taking a set of car keys from inside the residence, and attempting to open a vehicle parked outside the residence. In addition, the Appellate Court noted that the residential burglary could be linked closely in time and in proximity to events over which petitioner does not dispute involvement.

Prior to petitioner's guilty plea, he was facing five felony charges, which, in total, carried a maximum sentence of 41 years in prison. In exchange for the dropping of three of the charges, petitioner agreed to plea guilty to the residential burglary and disarming of a peace officer charges. Petitioner made it very clear in the plea proceedings that he understood the details of the plea bargain. This court finds it unlikely that, from an objective standpoint, petitioner would have insisted on going to trial on five felony counts with a maximum sentence of 41 years rather than take a plea deal with a maximum sentence of 22 years. This is reinforced by the fact that the evidence against petitioner for

the three dropped charges was decidedly in the state's favor.

Lastly, the comments of the petitioner himself are in stark contrast to his claims. He stated, "by coming up here and admitting my guilt, taking my punishment, that is the example I want to set, so I accept whatever sentence you have, and that's it." Petitioner's words indicated that his motive was to set a good example for his children by pleading guilty. As such, his decision to plead guilty to the residential burglary charge would not have been affected by information that some of the evidence was not conclusive regarding his guilt.

Accordingly, this court holds that the Illinois Appellate Court's determination that there was no prejudice as a result of plea counsel's advice was not unreasonable.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final judgment adverse to a habeas petitioner. A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1). To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Therefore, this court concludes that a COA is unwarranted.

IT IS THEREFORE ORDERED THAT:

(1) The clerk is directed to substitute Nedra Chandler, Warden, as the Respondent in this case. The clerk is also directed to terminate Lisa Madigan as a Respondent.

(2) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

(3) A certificate of appealability is DENIED.

(4) This case is terminated.

ENTERED this 26th day of June, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE